**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**



(1) JOHN DOE 1, a minor, by and through his
    parent and next friend, JANE DOE 1;

(2) JOHN DOE 2, a minor, by and through his
    parent and next friend, JANE DOE 2; and

(3) JOHN DOE 3, a minor, by and through his
    parent and next friend, JANE DOE 3;

(4) JOHN DOE 4, a minor, by and through his
    parent and next friend, JANE DOE 4;

(5) JOHN DOE 5, a minor, by and through his
    parent and next friend, JANE DOE 5;

          *Plaintiffs*,

v.                                Case No. CIV-25-403-JAR

(1) INDEPENDENT SCHOOL DISTRICT NO. 39    JURY TRIAL DEMANDED
    OF CHOCTAW COUNTY, OKLAHOMA;
    a/k/a HUGO PUBLIC SCHOOLS or
    HUGO PUBLIC SCHOOL DISTRICT; and

(2) YOLANDA DUNBAR;

          *Defendants*.

## PLAINTIFFS' ORIGINAL COMPLAINT

      Plaintiffs John Does 1-5,[1] minor children, proceeding by and through their respective

parent and next friend, bring this action against Defendants Independent School District No. 39 of

---

[1] Plaintiffs proceed under pseudonyms to protect the identities of minor victims of abuse pursuant to Federal Rule of Civil Procedure 5.2(a), 18 U.S.C. § 3509(d), *E.D. Okla. CM/ECF Admin. Guide, (Privacy – Names of Minor Children)* and applicable precedent. "Jane Does 1-5" are used to preserve the anonymity of the minor plaintiffs. Plaintiffs intend to seek leave of Court to proceed under pseudonym and to request entry of a protective order consistent with the practices of the Eastern District of Oklahoma.

Choctaw County, Oklahoma, also known as Hugo Public Schools ("Hugo Public Schools" or the "District"), and Yolanda Dunbar ("Dunbar"), and state as follows:

## I.  PRELIMINARY STATEMENT

1.     Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 to recover damages for the constitutional violations and injuries they suffered as a result of the gross failures and deliberate indifference of Defendant Hugo Public Schools and its teachers, staff, and administrators in responding to repeated acts of child abuse. Plaintiffs—three of whom are nonverbal, disabled middle-school students, all of whom are male—were subjected to ongoing physical and emotional abuse by Defendant Yolanda Dunbar, a special education teacher employed by Hugo Public Schools.

2.     The harm inflicted on these children resulted directly from the School District's callous and systemic indifference to its constitutional and statutory obligations to protect its most vulnerable students. For years, the District maintained a culture of tolerance toward abuse and neglect, repeatedly failing to investigate, report, or address well-known risks to students with disabilities.

3.     During the 2024–2025 school year, Dunbar's abuse was captured on school surveillance video on dozens of occasions and culminated in her arrest on felony child abuse charges. These acts were neither isolated nor unforeseeable. They occurred openly in the classroom, in full view of other District employees, and were repeatedly visible on a live surveillance feed accessible to the building principal.

4.     Despite these facts, Hugo Public Schools' personnel failed to intervene, failed to report the abuse as required by law, and failed to protect the students entrusted to their care. The District's entrenched deficiencies in supervision, training, and reporting created an environment where abuse

could persist unchecked. These systemic failures reflect deliberate indifference to the constitutional rights of students with disabilities and were the moving force behind the violations at issue.

5.      As a result of Defendants' conduct, Plaintiffs suffered severe physical pain, emotional trauma, and the deprivation of their constitutional right to bodily integrity. Plaintiffs seek redress under 42 U.S.C. § 1983 for these constitutional violations against the School District and assert supplemental state-law claims for negligence and gross negligence against the District, and for assault, battery, and intentional infliction of emotional distress against Defendant Dunbar.

## II.  THE PARTIES

### A.  PLAINTIFF JOHN DOE 1, A MINOR

6.      Plaintiff John Doe 1 is a minor who, at all relevant times, was a student at Hugo Middle School and a resident of Choctaw County, Oklahoma. John Doe 1 is nonverbal and has disabilities that qualify him for special education services under federal and state law. He has been diagnosed with Down syndrome and experiences developmental delays. During the 2023–2024 and 2024–2025 school years, John Doe 1 was a student under the instruction, care, and supervision of Defendant Yolanda Dunbar, a teacher employed by Defendant Hugo Public Schools. John Doe 1 brings this action by and through his next friend and mother, Jane Doe 1, who is also a resident of Choctaw County, Oklahoma.

### B.  PLAINTIFF JOHN DOE 2, A MINOR

7.      Plaintiff John Doe 2 is a minor who, at all relevant times, was a student at Hugo Middle School and a resident of Choctaw County, Oklahoma. John Doe 2 is nonverbal and has disabilities that qualify him for special education services under federal and state law. He has been diagnosed with CHARGE syndrome and autism and experiences significant developmental delays. During

the 2021–2022, 2023–2024, and 2024–2025 school years, John Doe 2 was a student under the instruction, care, and supervision of Defendant Yolanda Dunbar, a teacher employed by Defendant Hugo Public Schools. John Doe 2 brings this action by and through his next friend and mother, Jane Doe 2, who is also a resident of Choctaw County, Oklahoma.

### C. PLAINTIFF JOHN DOE 3, A MINOR

8.     Plaintiff John Doe 3 is a minor who, at all relevant times, was a student at Hugo Middle School and a resident of Choctaw County, Oklahoma. John Doe 3 is nonverbal and has disabilities that qualify him for special education services under federal and state law. He has been diagnosed with Phelan-McDermid syndrome, is unable to eat independently, is wheelchair-bound, and experiences significant developmental delays. During the 2023–2024 and 2024–2025 school years, John Doe 3 was a student under the instruction, care, and supervision of Defendant Yolanda Dunbar, a teacher employed by Defendant Hugo Public Schools. John Doe 3 brings this action by and through his next friend and mother, Jane Doe 3, who is also a resident of Choctaw County, Oklahoma.

### D. PLAINTIFF JOHN DOE 4, A MINOR

9.     Plaintiff John Doe 4 is a minor who, at all relevant times, was a student at Hugo Middle School and a resident of Choctaw County, Oklahoma. John Doe 4 is verbal and has disabilities that qualify him for special education services under federal and state law. He has been diagnosed with autism and attention-deficit/hyperactivity disorder (ADHD) and experiences developmental delays. During the 2023–2024 school year and the fall semester of 2024, John Doe 4 was a student under the instruction, care, and supervision of Defendant Yolanda Dunbar, a teacher employed by Defendant Hugo Public Schools. John Doe 4 brings this action by and through his next friend and

mother, Jane Doe 4**,** who was also a resident of Choctaw County, Oklahoma, during the relevant time period. John Doe 4 and his mother, Jane Doe 4, are now residents of Lamar County, Texas.

### E. PLAINTIFF JOHN DOE 5, A MINOR

10.    Plaintiff John Doe 5 is a minor who, at all relevant times, was a student at Hugo Middle School and a resident of Choctaw County, Oklahoma. John Doe 5 is verbal and has disabilities that qualify him for special education services under federal and state law. He has been diagnosed with phonological dyslexia, emotional dyslexia, dyslexia, and attention-deficit/hyperactivity disorder (ADHD), and he experiences developmental delays. During the 2023–2024 school year, John Doe 5 was a student under the instruction, care, and supervision of Defendant Yolanda Dunbar, a teacher employed by Defendant Hugo Public Schools. John Doe 5 brings this action by and through his next friend and mother, Jane Doe 5**,** who was also a resident of Choctaw County, Oklahoma, during the relevant time period.

### F. DEFENDANT INDEPENDENT SCHOOL DISTRICT NO. 39 OF CHOCTAW COUNTY

11.    Defendant Independent School District No. 39 of Choctaw County, Oklahoma**,** also known as Hugo Public Schools ("Hugo Public Schools" or the "District"), is a public educational institution organized and existing under the laws of the State of Oklahoma, with its principal office located in Choctaw County, Oklahoma.

12.    Hugo Public Schools is a political subdivision of the State of Oklahoma and operates as a public school district receiving county, state, and federal funding. The District is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, acted under color of state law. Through its Board of Education and final policymakers, the District establishes and enforces official policies, customs, and practices governing the training, supervision, and discipline of its employees, including teachers and staff within its special education program.

13.     Hugo Middle School, located at 300 North E. Street, Hugo, Oklahoma, 74743, is one four (4) schools operated by Hugo Public Schools.

14.     Hugo Public Schools may be served with process at its principal place of business: Attn: Dama McLemore, Clerk of the Board of Education, 1603  E. Kirk Street, Hugo, Oklahoma 74743.

G. DEFENDANT YOLANDA DUNBAR

15.     Defendant Yolanda Dunbar is an individual who, at all relevant times, was employed by the School District as a special education teacher at Hugo Middle School.

16.     On February 4, 2025, Dunbar was arrested and charged with felony child abuse arising from her conduct toward students in her classroom.

17.     On information and belief, Dunbar is a resident of Lamar County, Texas and can be served at 4882 FM 906 E. Powderly, Lamar County, Texas 75473, or wherever she may be found.

### III.  JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

19.     This Court also has subject matter jurisdiction under 28 U.S.C.  § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

20.    Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

21.    The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy as the federal claim.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to the claims occurred in Choctaw County, Oklahoma, which lies within the Eastern District of Oklahoma, and because the School District is located and transacts business in this District.

23.    Plaintiffs timely served the School District with written notice of their tort claims pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 156, on February 12, 2025. The School District did not affirmatively approve the claims within 90 days, and the claims were therefore deemed denied by operation of law. This action is timely filed within the 180-day period following denial.

## IV.  FACTUAL ALLEGATIONS

### A.  THE FAILURE OF HUGO PUBLIC SCHOOLS

24.    Hugo Public Schools had a duty to provide a safe and secure learning environment for its students. It failed in that duty.

25.    The District failed to protect its most vulnerable students from known risks of cruelty, mental, and physical abuse. An abuser was permitted to repeatedly prey upon vulnerable students on school grounds and during school hours, even after the District had been placed on notice of her misconduct.

26.    The abuser was Yolanda Dunbar, a special education teacher at Hugo Middle School and a state actor acting under color of state law.

27.    Plaintiffs were some of Dunbar's victims.

**B. DEFENDANT DUNBAR'S MODUS OPERANDI**

28.    The District hired Dunbar to be a special education teacher at Hugo Middle School.

29.    During the 2021–2022, 2022–2023, 2023–2024, 2024–2025 school years, Defendant Dunbar served as a special education teacher at Hugo Middle School. Her classroom included nonverbal, verbal, profoundly disabled students, handicapped children, and developmentally delayed students, including Plaintiffs.

30.    While employed by the District, Dunbar used her classroom as a personal environment of cruelty and abuse to systematically target, humiliate, and mentally and physically abuse the School District's most vulnerable students.

31.    Despite numerous and obvious red flags of abusive behavior directed at these profoundly disabled students, the District failed to take any action. Faced with repeated warning signs of abusive conduct toward these most vulnerable children, the District willfully ignored its duty to intervene, investigate, or protect the students under its care.

**C. CONFIRMATION OF DUNBAR'S CRIMINAL CONDUCT AND THE DISTRICT'S DELIBERATE INDIFFERENCE**

32.    On January 16, 2025, law enforcement responded to Hugo Middle School after it was observed on live surveillance that Dunbar had forcibly removed John Doe 1 from another classroom and physically abused him in another room. That same day, Dunbar was removed from campus.

33.    On Friday, January 31, 2025, Hugo Public School Superintendent Brandy Blalock posted a letter on the school website and on Facebook addressed to "Dear Hugo school family" which stated in pertinent part, as follows:

> Recently, we received an allegation of misconduct by five Hugo school employees. The school district is conducting an internal investigation and cooperating with law enforcement. Because this is a personnel matter, I am unable to share additional information at this time - except that the employees involved have been placed on administrative leave and are not on campus.

34.    A subsequent law enforcement investigation uncovered extensive video evidence of Dunbar physically abusing Plaintiffs on school premises, often multiple times per day, beginning at least as early as October 2024 and continuing through January 2025. The acts captured on video included, among other things, slapping students in the face and head; grabbing and twisting wrists and arms; yanking and dragging students; forcing students to the floor or shoving them forward into furniture; choking and restraining students with forearms and body weight; pulling students by the ears, hair, and clothing; shoving paper towels and other items into students' mouths; and pressing fingers into a student's eyes. The investigation documented over seventy distinct videoed incidents of abuse.

35.    Many of these events occurred in the presence of School District staff assigned to Dunbar's classroom, who observed or were positioned to observe the abuse as it occurred. Staff members reported that Dunbar created an environment of intimidation, instructed that "what happens in this room stays in this room," and gave demeaning nicknames to the nonverbal students.

36.    The abuse captured on video was also visible on a live feed to the Hugo Middle School principal's office. Nevertheless, no effective protective measures were implemented to stop or prevent Dunbar's abuse of Plaintiffs in the weeks and months before her removal from campus.

37.    On February 4, 2025, Dunbar was arrested and charged with multiple felony counts of child abuse based on her conduct just towards Plaintiffs John Does 1 and 2.

38.    Felony charges were filed against Dunbar for child abuse pursuant to 21 OKLA. STAT.§ 843.5(A), which reads as follows:

> Any person who shall willfully or maliciously engage in child abuse, as defined in this section, shall, upon conviction, be guilty of a felony punishable by imprisonment in the custody of the Department of Corrections not exceeding life imprisonment, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

39.    The Probable Cause Affidavit states that Hugo Public Schools employee Sheila Raines disclosed that Dunbar told her, "watch this," before abusing John Doe 1, and that Raines lied when she denied witnessing the abuse. The affidavit clarifies, "In the video, it is evident that Raines did, in fact, see the incident and was in direct communication with Dunbar while John Doe 1was in the classroom."

40.    While continuing to watch the video "Deputy Buchanan, observed Dunbar also abusing another student."

41.    Hugo Public School employees Aster Cooper, Ashley McCarty, and Kelsey James told Deputy Buchanan and Officer Simpson of Dunbar's aggressive behavior and "that Dunbar had given the three severe and profound students in the classroom the nicknames of 'Ugly One, Ugly Two, and Ugly Three.'"

42.    Thereafter, the Oklahoma State Board of Education summarily suspended Dunbar's teaching certificate pending revocation, citing 74 videos of abuse and finding that emergency action was necessary to protect student health and safety.

43.    Several of Plaintiffs' parents watched the videos in horror as their precious boys were choked by the forearm by their teacher, slung around like rag dolls, had paper towels shoved into

their mouths, and were tackled to the floor. Plaintiffs were continuously taunted and provoked throughout the videos. The mere presence of Dunbar caused the boys to flinch in fear.

44.    The duration of the abuse and the number of additional victims remain unknown, as videos predating mid-October 2024 were overwritten by the continuous video feed.

45.    Stunningly, the abuse captured on video occurred in the presence of other school staff members, yet no one intervened to protect these nonverbal, vulnerable, and disabled boys.

46.    Finally, the video feed was livestreamed into Middle School Principal Amanda Tidwell's office, yet she took no action

47.    Beginning at 5:07 p.m. on Wednesday, February 5, 2025, Hugo Public School employee Kelsey James initiated a Facebook message with the mother of John Doe 2. Ms. James defends herself, and confesses, as follows:

    a.  "Not all of us are guilty... ".

    b.  "..[S]uperintendent knows that I spoke to Tidwell and another staff member and nothing was done."

    c.  "Tidwell is the one that needs to be looked at."

    d.  "DA did not file charges on me but yet the school still terminated me this morning."

    e.  " ... I did speak up.. .it should have been looked at way before now and Tidwell knew about it."

    f.  "Tidwell knew about things that were going on since before this year and I have screenshots to prove that she did and she never did anything about it."

    g.  "(I) also told Madison Debo the DHS worker at school that Yolanda was being mean to them and they should've looked into it sooner until now, but now they have blamed all of for not speaking up and that's just not true."

h.  " ... I told Madison things that happened. I remember specifically when Dunbar would grab things out of [John Doe 2] mouth if he had it in there, I told her should would do that. I also told her that she was being mean to them verbally somebody should've looked into it sooner.

i.  "They blamed all three of us for failure to report and they terminated us this morning now the board has to have a meeting of whether or not they're gonna approve or disapprove it.."

j.  "I gave all the screenshots I had to the [S]uperintendent this morning from the concerned parent that went to her with concerns about Dunbar and she didn't do anything."

k.  "She also told board member Todd Beeson (sic) and nothing was done."

l.  "Tidwell knew how she was before this year started."

m.  "I had only been in that class for five months and this parent reached out to me and I told Miss Tidwell and she told me that I couldn't have contact with that parent anymore because I wasn't the teacher and so I didn't."

n.  "I told them if I'm gonna go down for failing to report even though I did report then there needs to be a few others as well."

o.  " ... so I just am very hurt and don't understand why they are still terminating me."

p.  "I know this doesn't have anything to do with you, but I just wanted to let you know I've never heard (sic) [John Doe 2] and I did speak up even though it looks like all of us just let it happen but that's not true."

q.  " ... I hope you get the answers that you need."

48.    Kelsey James then deleted her messages to John Doe 2's mother.

49.     At the Special Board Meeting of the Hugo Public Schools on February 7, 2025, the Hugo Board of Education voted to dismiss Yolanda Dunbar and accept the resignations of Aster Cooper, Kelsey James, Ashley McCarty, and Sheila Raines.

50.     Plaintiffs suffered physical pain and injury, extreme emotional distress, fear, humiliation, trauma, loss of dignity and bodily autonomy, regression and behavioral harms, and interference with their educational access and progress as a direct and proximate result of Defendants' conduct.

51.     Hugo Public Schools owed Plaintiffs a duty to protect them from abuse, to properly supervise classrooms and staff, to train employees on child protection and mandatory reporting, and to timely report and respond to suspected abuse. The School District breached those duties through systemic failures, deliberate indifference to obvious risks, and customs or practices that tolerated and perpetuated unsafe conditions for disabled, nonverbal students.

## V.   CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983: Violation of the Fourteenth Amendment Right to Bodily Integrity (All Plaintiffs Against Defendant Hugo Public Schools)

52.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

53.     Under the Fifth and Fourteenth Amendments, Plaintiffs have the right to Due Process and Equal Protection of the Law.

54.     At all times relevant hereto, it was clearly established that Plaintiffs had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

55.     At all times relevant hereto, the School District was a state actor acting under the color of state law.

56.     Defendant denied Plaintiffs their rights to Due Process and Equal Protection of the Law by:

a.   enacting inadequate policies, specifically regarding the reporting of suspected physical misconduct to law enforcement;

b.   failing to enact and implement adequate policies concerning physical abuse of students by adults on campus;

c.   failing to remove suspected child abusers from campus;

d.   failing to remove students from classrooms or offices occupied by suspected child abusers;

e.   failing to investigate Dunbar properly before and after these referenced allegations;

f.   failing to train and supervise Dunbar properly;

g.   failing to hire, train, and supervise teachers and/or administrators properly;

h.   failing to report child abuse to law enforcement;

i.   failing to report child abuse to parents of victims;

j.   failing to investigate Dunbar's misconduct;

k.   continuing to employ Dunbar and allow her unfettered, unsupervised interaction with students;

l.   failing to adequately train and supervise the Hugo Public Schools' staff and employees; and

m.   exhibiting deliberate indifference to the misconduct directed at Plaintiffs and others like them.

57.   Hugo Public School has an unconstitutional custom or policy of:

a.   failing to properly investigate criminal misconduct against students;

b.   failing to report criminal misconduct against students;

c.   discounting the credibility of students' allegations;

d.   failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of students; and

e.   failing to enact policies that require adherence to reporting requirements.

58.   Hugo Public Schools' custom or policy was demonstrated by the fact that Defendant received multiple allegations of misconduct regarding Dunbar, yet failed to investigate those allegations or report them to law enforcement.

59.   Defendant's policy is attributable to municipal policymakers including, but not limited to, Superintendent Brandy Blalock, Middle School Principal Amanda Tidwell, and the Hugo Board of Education.

60.   The inadequate policies and resulting failures to train allowed Dunbar, as a Hugo Public School employee, to violate Plaintiffs' constitutional rights to equal protection and due process.

61.   Further, Defendant affirmatively acted to create, or increased the Plaintiffs' exposure and/or vulnerability to, the danger from Dunbar's misconduct.

62.   Physical abuse of students at a middle school and during school sponsored activities is a danger to those students.

63.   A school environment where children are feloniously abused from adults is a dangerous environment.

64.   Hugo Public School was a dangerous environment for its students, including Plaintiffs.

65.   Plaintiffs were members of a limited and specifically definable group—namely, male, minor students with learning disabilities.

66.   Hugo Public School created the danger or increased Plaintiffs' vulnerability to the danger by effectively ignoring numerous allegations of misconduct by Dunbar; not immediately

removing Dunbar from campus after receiving notice of her misconduct; continuing to allow Dunbar unfettered and unsupervised access to students; not effectively investigating allegations of misconduct by Dunbar; and/or not immediately reporting the allegations of misconduct to law enforcement and/or the students' parents.

67.     Hugo Public Schools' conduct put Plaintiffs and others like them at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at Hugo Middle School. Indeed, Plaintiffs and other students were abused by Dunbar after Hugo Public School had notice of Dunbar's misconduct.

68.     The risk of danger was obvious or known to Hugo Public School, including due to disclosure of Dunbar's misconduct to Middle School Principal Amanda Tidwell.

69.     Hugo Public Schools' actions and inactions created an opportunity for Dunbar to continue to abuse Plaintiffs and other students, as those actions stripped necessary aid from Plaintiffs and others. Reporting Dunbar's misconduct to law enforcement and/or the victims' parents could have enabled law enforcement, regulatory bodies, or parents to have sheltered Plaintiffs and other students from Dunbar's abusive behavior, including by removing Dunbar from Hugo Public School, removing Plaintiffs and/or other students from Hugo Public School, or otherwise preventing Dunbar from further access to Hugo students including Plaintiffs.

70.     Hugo Public School acted recklessly in conscious disregard of this risk.

71.     Hugo Public Schools' conduct shocks the conscience

72.     Hugo Public Schools' and its officials' failings as described above resulted in Plaintiffs and other students suffering severe emotional distress, psychological damage, significant pain and suffering, and/or personal humiliation.

73.    The School District's failures were not isolated or negligent missteps. Staff and administrators had actual and constructive notice of a pattern of abusive conduct in Dunbar's classroom evidenced by live and recorded video and by first-hand observations of multiple employees. Despite this notice, The School District failed to take timely and appropriate action to stop the abuse, thereby allowing it to persist and escalate.

74.    The School District also affirmatively created or increased the danger to Plaintiffs by allowing Dunbar continued, unfettered access to nonverbal and profoundly disabled children despite known red flags, by maintaining an environment where subordinate staff were deterred from reporting, and by failing to monitor and intervene in the face of readily observable abuse.

75.    The School District's customs, practices, and failures to train and supervise were the moving force behind the constitutional violations and were closely related to the resulting injuries. As a direct and proximate result, Plaintiffs suffered the harms described above.

**COUNT II – Negligence (John Does 1 and 2 Against Defendant Hugo Public Schools)**

76.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

77.    The School District owed Plaintiffs a duty to exercise ordinary care in hiring, training, supervising, and retaining employees; to maintain safe educational environments; to protect students from foreseeable harm; to enforce mandatory reporting; and to respond reasonably to allegations and evidence of abuse.

78.    The School District breached its duties by, among other failures:

   a.   failing to properly supervise the Hugo Public Schools staff;

   b.   failing to properly investigate reports of misconduct and abuse;

   c.   failing to conduct appropriate assessments of students and employees;

   d.   failing to report neglect, abuse, and misconduct as required by law;

    e.   failing to have proper policies and procedures in place to prevent abuse inside Hugo Public Schools;

    f.   failing to have proper controls and checks in place to prevent employees from abusing students;

    g.   failing to take precautions to prevent Plaintiffs from suffering further injury;

    h.   failing to adequately staff the Hugo Public Schools with sufficient and qualified personnel to provide the level of professionalism needed by Plaintiffs;

    i.   failing to hire sufficient and qualified personnel to supervise and monitor the staff at Hugo Public Schools;

    j.   failing to properly train Hugo Public Schools employees to identify, report, and prevent abuse of disabled and nonverbal students;

    k.   failing to do a proper and thorough background check before hiring employees; and

    l.   retaining problematic employees;

79.    The School District's negligence directly and proximately caused Plaintiffs' injuries and damages. Plaintiffs seek all recoverable damages permitted by law. To the extent applicable, Plaintiffs seek recovery under the GTCA and subject to its limitations.

80.    Hugo Public Schools was properly served with Notice of Tort Claims of John Does 1 and 2 pursuant to the Oklahoma Governmental Tort Claims Act on February 12, 2025. Under the GTCA, the School District had 90 days thereafter (until May 13, 2025) to accept or reject Plaintiffs' claim. The School District did not formally accept or reject Plaintiffs' claim during that time but, instead, requested additional information from the Plaintiff in the form of medical records and authorizations on May 2, 2025. Plaintiff never refused to provide such records. And, on October

30, 2025, Plaintiff provided medical authorizations for John Does 1 and 2. Plaintiffs' claim has thus been deemed denied for purposes of the GTCA, and they are within their 180-day window from the date of such denial in which to now bring their state-law claims against the School District.

**COUNT III – Gross Negligence (John Does 1 andd 2 Against Defendant Hugo Public Schools)**

81.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

82.    The School District's conduct, in light of the obvious and documented risks to Plaintiffs and the School District's awareness of ongoing abuse in a surveilled classroom serving nonverbal, profoundly disabled children, constituted gross negligence reflecting reckless disregard for Plaintiffs' safety and rights.

83.    The School District's sustained failure to act in the face of repeated, visible abuse—occurring in front of staff and on a live feed to administration—demonstrates a conscious indifference to the substantial likelihood of serious harm to Plaintiffs.

84.    As a direct and proximate result, Plaintiffs suffered the injuries and damages described herein. Plaintiffs seek all recoverable damages permitted by Oklahoma law.

**COUNT IV – Assault and Battery (All Plaintiffs Against Defendant Dunbar)**

85.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

86.    Dunbar intentionally placed Plaintiffs in apprehension of immediate harmful and offensive contact and intentionally made harmful and offensive contact with them without consent by slapping, striking, grabbing, choking, dragging, pinning, shoving, forcing items into their mouths, and otherwise unlawfully touching them.

87.    Dunbar's conduct constitutes assault and battery under Oklahoma law. As a direct and proximate result, Plaintiffs suffered physical pain and injury, emotional distress, humiliation, and other damages.

88.    Plaintiffs seek compensatory and, to the extent permitted by law, punitive damages against Dunbar for her intentional, malicious, and recklessly indifferent conduct.

**COUNT V – Intentional Infliction of Emotional Distress (All Plaintiffs Against Defendant Dunbar)**

89.    The previous factual statements and allegations are incorporated by reference.

90.    The physical and mental abuse that Dunbar inflicted on Plaintiffs was done maliciously and sadistically.

91.    Dunbar's actions were extreme and outrageous and beyond the bounds of decency.

92.    Dunbar's actions were atrocious and utterly intolerable in a civilized society.

93.    As a direct result of Dunbar's actions, Plaintiffs were severely traumatized, beyond which a reasonable young boy would be expected to endure.

94.    Dunbar intentionally and/or recklessly caused Plaintiffs emotional distress.

95.    Dunbar actions were intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiffs.

## VI.  DAMAGES

96.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and continue to suffer:

     a.  physical pain and injury;

     b.  severe emotional distress and trauma;

     c.  mental anguish;

     d.  humiliation;

     e.  loss of dignity and bodily autonomy;

     f.  behavioral and developmental regression;

     g.  interference with educational access and progress;

     h. and loss of enjoyment of life.

97.     Plaintiffs also seek special damages, including the costs of counseling, therapy, and related care reasonably necessary to treat the harms described

## VII.  JURY DEMAND

98.     Plaintiffs demand a trial by jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants Hugo Public Schools and Yolanda Dunbar, and award the following relief:

a.  Compensatory damages against all Defendants, jointly and severally where permitted by law, in an amount to be proven at trial, for physical pain, emotional distress, psychological trauma, mental anguish, loss of dignity and bodily autonomy, humiliation, interference with educational access, and loss of enjoyment of life;

b.  Special damages for past and future costs of therapy, counseling, and related medical and supportive services reasonably necessary to address Plaintiffs' injuries;

c.  Punitive damages against Defendant Dunbar to the extent permitted by law;

d.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

e.  Pre- and post-judgment interest as allowed by law; and

f.  Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Ross Leonoudakis*
Bradley E. Beckworth, OBA No. 19982
Ross Leonoudakis, OBA No. 34570
Nathan B. Hall, OBA No. 32790
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*Bbeckworth@nixlaw.com*
*Rossl@nixlaw.com*
*Nhall@nixlaw.com*

**JURY TRIAL DEMANDED**    -and-

**ATTORNEYS' LIEN CLAIMED**    */s/ Cameron Spradling*
Cameron Spradling, OBA No. 8509
Katelyn Elrod, OBA No. 35596
**CAMERON SPRADLING, PLLC**
500 North Walker Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 605-0610
Facsimile: (405) 605-0615
*cameron@cameronspradling.com*
*katelyn@cameronspradling.com*

***Attorneys for Plaintiffs***