

## RELEASE AND SETTLEMENT AGREEMENT

This full and final Release and Settlement Agreement (the "Release") is made and entered by and between:

| | |
|---|---|
| "Releasors:" | Plaintiffs Shawna Benavides, as mother of J⬛⬛ L⬛⬛, a minor ("J.L.") (a/k/a John Doe 1); Kamber Batchelor, as mother of B⬛⬛ B⬛⬛, a minor ("B.B.") (a/k/a John Doe 2); Chelsea Mosley, as mother of D⬛⬛ B⬛⬛, a minor ("D.B.") (a/k/a John Doe 3); Jamie Ivey, as mother of C⬛⬛ L⬛⬛, a minor ("C.L.") (a/k/a John Doe 4); and Amber Elvington, as mother of S⬛⬛ W⬛⬛, a minor ("S.W.") (a/k/a John Doe 5) (collectively, B.B., J.L., C.L. D.B. and S.W. will referred to in this Release as the "Minors;" and collectively the Minors and their respective parents or guardians identified in this paragraph shall be referred to as the "Releasors"); |
| | and |
| "Releasees:" | Independent School District No. 39 of Choctaw County, Oklahoma a/k/a Hugo Public Schools ("the "School District"), Oklahoma Schools Insurance Group ("OSIG"), and Claims Administrator Gallagher Bassett (collectively the "Releasees"). |

### Recitals

A.        On November 6, 2025, the Releasors filed a Complaint in the United States District Court for the Eastern District of Oklahoma, Case No. CIV-25-403-JAR titled *John Does 1-5 (through their respective parent or next friend), Plaintiffs v. Independent School District No. 39 of Choctaw County, Oklahoma, a/k/a Hugo Public Schools and Yolanda Dunbar ("Dunbar"), Defendants* (the "Civil Action"). In the Civil Action, Releasors alleged that the actions of the School District and Dunbar caused physical and mental injuries and damage to the Minors and damages to the Releasors. Collectively, the allegations of Releasors against the School District related to the claimed injuries and damage to the Minors and claimed damages to the Releasors will be referred to in this Release as the "Incidents."

B.        For purposes of this Release, Releasees shall include any current or former agent, employee, servant, employers, officers, school administrators, board members, successors, insurers, attorneys, or assigns, collectively and individually, of the individually named Releasees. Releasees shall also include any of the Releasees' insurers, re-insurers, current authorized claims handlers and claim representatives, including their agents and representatives. The term "Releasees" does not include Yolanda Dunbar.

C.        For purposes of this Release, Releasors shall include any and all of Releasors' heirs, executors, administrators, successors, and assigns. For purposes of this Release, the Releasors and Releasees will be collectively referred to as the "Parties."

D.      The Parties desire to enter into this Release in order to provide for certain payments in full settlement and discharge of any and all claims of Releasors against the Releasees, including those which are, or might have been, the subject matter of the Civil Action, upon the following terms and conditions:

The Parties agree as follows:

## 1.0    Release and Discharge

1.1      In consideration of the payments set forth in Section 2, the "Settlement Payments," Releasors hereby completely and forever release and discharge Releasees from any and all past, present, or future claims (including demands, obligations, actions, causes of action, and rights) and damages (including general damages, special damages, economic damages, education-related damages or claims, non-economic damages, punitive damages, costs, expenses, and compensation of any nature whatsoever), whether based in common law, contract, tort, statute or otherwise, which Releasors now have, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of the Incidents, whether raised in the Civil Action or that which could have been raised in the Civil Action

1.2      The Settlement Payments set forth in Section 2 are specifically made as a compromised settlement of Releasors' claims for any and all damages arising from the Incidents, including all claims either asserted or that could have been asserted in the Civil Action. Releasors further agree that Releasors are accepting the Settlement Payments as a compromise of matters involving disputed issues of law and fact. Releasors assume the risk that the facts or law may be other than as Releasors believe. It is understood and agreed to by the Parties that this settlement set out in this Release is a compromise of a disputed claim. It is further agreed by the Parties that the Settlement Payments are not to be construed as an admission of liability on Releasees' part, by whom liability is expressly denied. Releasees intend merely to avoid the costs and/or risk of litigation.  Releasors acknowledge, declare and represent that they understands that the Minors' claimed injuries are or may be permanent and perhaps progressive, and therefore their injuries, damages, and losses may not now be fully known, and may be more numerous or more serious than now expected; but in providing this Release, Releasors rely wholly upon their own judgment of the future development, progress, and result of such injuries, known and unknown. Releasors represent that they have not been influenced to any extent whatsoever in giving this Release Agreement by any representations or statements regarding their injuries or the legal liability therefor or regarding any other matters made by the those who are released under the terms of this Release, or by any person or persons representing the Releasees, or by any physician, doctors or medical providers employed by such persons or entities. Releasors waive and assume the risk of any and all claims for damages arising from or related to the Incidents that exist as of the date of this Release, even those claims and damages that Releasors do not now know of, do not now suspect to exist or that may arise in the future, whether that lack of knowledge or lack of suspicion is through ignorance, oversight, error, negligence, or otherwise, and even if that lack of knowledge or lack of suspicion would have, if known now, affected Releasors' individual decisions to provide, enter into and deliver this Release.

2

1.3    Releasors agree to indemnify, reimburse, and hold harmless, now and forever, the Releasors as defined in this Release, including but not limited to the School District, OSIG, and Gallagher Bassett from any and all liens or claims, known or unknown, and any causes of action, demands, damages, costs or expenditures from any party for costs or damages incurred by them or for any services rendered to or on behalf of the Releasors alleged to have been incurred as a result of the Incidents. Releasors agree to hold the School District and those released under this Release harmless and defend the same, including any award of attorney fees, should any cause of action be brought against them from any third parties as a result of loss or damages they allege to have incurred for services rendered to or for the Releasors as a result of the Incidents set forth in this Release.

1.4    Releasors further declare that no promise, inducement or agreement not otherwise expressed in this Release has been made to Releasors. Releasors further stipulate, agree and understand that the terms of this Release are contractual and not a mere recital and that the representations in this Release are material representations upon which Releasees have relied in entering into this Release.

1.5    Releasors declare that there are no known unsatisfied liens or assignments regarding any claim at issue.

1.6    Releasors agree to dismiss the claims against Releasees in the Civil Action with prejudice with each of the Parties to bear their respective attorney fees and costs.

## 2.0    Settlement Payments

In consideration of the settlement, release, and discharge, as set forth in this Release, a settlement in the sum of TWO MILLION, FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) (the "Settlement Payment") is to be paid as set forth below:

2.1    The School District, or another entity on its behalf, shall make payment to the Releasors in the amount of $1,000,000.00, comprised of cash in the amount of $550,000.00 to Nix Patterson, LLP's IOLTA account.

2.2    The School District, or another entity on its behalf, shall make payment to Athene Qualified Assignment Corporation in the amount of $200,000.00 to fund future periodic payments set forth below on behalf of B████ B████, to be deposited with Athene Qualified Assignment Corporation, 7700 Mills Civic Pkwy, West Des Moines, IA, 50266, TAX ID 39-2408936, pursuant to the Qualified Assignment Agreement no later than ten days following entry of a final judgment by the Court in the Civil Action.

2.3    The School District, or another entity on its behalf, shall make payment to Athene Qualified Assignment Corporation in the amount of $250,000.00 to fund future periodic payments set forth below on behalf of and for the benefit of S████ E██ W████, to be deposited with Athene Qualified Assignment Corporation, 7700 Mills Civic Pkwy, West Des Moines, IA, 50266, TAX ID 39-2408936, pursuant to the Qualified Assignment and Release Agreement no later than ten days following entry of a final judgment by the Court in the Civil Action.

3

2.4    The School District shall pay to the judgment creditor the remaining $1,500,000.000 of the Settlement Payments out of its sinking fund over 3 years, as provided for by OKLA. STAT. tit. 62, § 361 *et seq.* and other applicable law, with post-judgment interest at the statutory rate provided by OKLA. STAT. TIT. 12 § 727.1.

3.0    **Periodic Payments**

3.1    Periodic payments will be made according to the Schedule of Payments as follows (the "Periodic Payments"):

a.    Payee:

$1,500.00 payable monthly, guaranteed for 4 year(s) which is 48 payments, beginning on 07/01/2029, with the last guaranteed payment on 06/01/2033.

$25,000.00 guaranteed lump sum paid on 10/17/2028.
$25,000.00 guaranteed lump sum paid on 10/17/2031.
$30,000.00 guaranteed lump sum paid on 10/17/2033.
$204,107.23 guaranteed lump sum paid on 10/17/2035.

Assignee: Athene Qualified Assignment Corporation
Annuity Issuer: Athene Annuity and Life Company
To fund the above periodic payments, a payment in the amount of $250,000.00 will be issued to "Athene Qualified Assignment Corporation" by the Releasees.

b.    Payee: Legacy Enhancement Master Pooled Trust FBO B████ B████████ PSNT

$2,228.69 payable monthly, guaranteed for 9 year(s) which is 108 payments, beginning on 08/01/2026, with the last guaranteed payment on 07/01/2035.

Assignee: Athene Qualified Assignment Corporation
Annuity Issuer: Athene Annuity and Life Company
To fund the above periodic payments, a payment in the amount of $200,000.00 will be issued to "Athene Qualified Assignment Corporation" by the Releasees.

All the payments set forth herein constitute damages on account of personal, physical injuries, arising from an occurrence within the meaning of Section 104(a)(2) of the IRS Code of 1986 as amended.

3.2    The parties hereto acknowledge and agree that OSIG shall make a qualified assignment within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of all of the Releasees' liability to make the periodic payments required herein. The qualified assignment shall be accepted by the Releasors without right of rejection and shall completely release and discharge the Releasees from such obligation hereunder as are assigned to

4

the Assignee. The Releasors recognizes that, in the event of such an assignment, the Assignee shall be their sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Releasees shall thereupon become final, irrevocable and absolute.

3.3    When the liability to make the periodic payments is assigned by way of a Qualified Assignment, the Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

3.4    Said payments cannot be accelerated, deferred, increased or decreased by the Releasors or any Payee, nor shall the Releasors or any Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise.

3.5    The Assignee reserves the right to fund its liability to make periodic payments through the purchase of an annuity policy from the Annuity Issuer. The Assignee shall be the owner of the Annuity policy, shall have all the rights of ownership, and may have the Annuity Issuer mail payments directly to the Payee.

3.6    Any payments to be made after the death of S██████ W██████ pursuant to the terms of this Release and Settlement Agreement shall be made to Estate of S██████ W██████ Upon reaching the age of majority, S██████ W██████ may submit a request to change the beneficiary to the Assignee.

3.7    Any payments to be made after the death of B██████ B██████ pursuant to the terms of this Release and Settlement Agreement shall be made to Legacy Enhancement Master Pooled Trust FBO B██████ B██████ PSNT.

Upon the death of B██████ B██████, the beneficiary will receive 100% of the remaining guaranteed periodic payments in a Lump Sum.

The Commuted Value is calculated by multiplying a Commutation Discount Factor of [95]% by the present value of unpaid guaranteed payments based on the discount rate curve. The discount rate curve is defined as a) or, in the case that a) is unavailable, b), where:

i) is the discount rate curve used to price similar structured settlement contracts at the time of the Calculation Date; and

ii) is 2.00% plus the 10 Year US Treasury Bond Rate published on Bloomberg, or its successor thereto, as of 16:00 Eastern Standard Time on the Calculation Date. If unavailable on that day, the next day such rate is available will apply.

Any payments paid before the Calculation Date will not be included in the Commuted Value. A payment is considered paid if the check for the payment has been cashed or the payment has been deposited by electronic funds transfer into the relevant bank account, if applicable. Athene Qualified Assignment Corporation and Athene Annuity and Life Company take no

responsibility for returning any payments paid after the Annuitant's death but before the Calculation Date. The Calculation Date will be on or before the 20th calendar day after receipt of due proof of death. This endorsement and all provisions of the contract related to the Commuted Benefit Percentage of guaranteed payments will expire effective as of the payment of the Annuitant Death Commutation lump sum described herein. For the avoidance of doubt, any provisions of the contract related to non-commuted payments will continue to be in effect.

3.8     The obligation of the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address on record for the Payee with the Annuity Issuer.

### 4.0     Attorney Fees

Releasors waive any and all claims, demands, actions, or causes of action for attorney fees which arose, arise, or may accrue from prosecuting their claims arising from or related to the Incidents, including the litigation and mediation of all claims in the Civil Action. Releasors agree that Releasees shall not be subject to any claims, demands, lawsuits, or actions of any kind seeking attorney fees, court costs or expert fees.

### 5.0     Representation of Comprehension of Document

In entering into this Release, Releasors represent that Releasors have read and fully understand and voluntarily accept the terms of this Release.

### 6.0     Tax Disclaimer

Releasors represent that Releasors have not relied upon any representation of Releasees or their counsel as to the tax consequences of this Release, nor is this Release contingent upon any favorable tax determination. Releasors further agree and acknowledge that any taxes, penalties or interest found to be due and owing, if any, as a result of the Settlement Payments shall be the sole and exclusive responsibility of Releasors to pay. Releasors further acknowledge that the School District and those others released under this Release have no obligation to withhold any state or federal tax of any kind, nature or amount. Accordingly, Releasors release and hold the School District, those released under the terms of this Release, and their counsel or consultants, harmless from any claim of any kind that Releasors might otherwise assert because of any unforeseen consequences associated with the giving of this Release or the receipt of the Settlement Payments.

### 7.0     Warranty of Capacity to Execute Release

The parents and guardians of the Minors who are signing this Release individually and on behalf of their respective Minor,  represent and warrant that they are of sound mind and that no Court has reached an adverse determination as to their competency, that the undersigned have the sole right and exclusive authority to execute this Release and receive the Settlement Payments, and that the undersigned have not sold, assigned, transferred, or conveyed any of the claims, demands, obligations, or causes of action referred to in the Release.

8.0   **Entire Agreement**

This Release contains the entire agreement between the Releasors and the Releasees with regard to the matters set forth in this Release. Any and all prior agreements, negotiations, understandings, and representations with respect to the matters set forth in this Release are hereby superseded and are of no further force or effect.

9.0   **Governing Laws**

The Releasors agree and acknowledge that the laws of the State of Oklahoma shall be used to consider and determine the validity of, and to construe and interpret the meaning of this Release.

10.0   **Additional Documents—Subsequent Modifications**

The Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Release. Releasors agree to provide Releasees' attorneys with all necessary forms, including but not limited to Form W-9, friendly suit documentation as needed for the Court to approve each settlement with each Minor, as well as any necessary Medicare affidavits or other documentation needed to effectuate this Release. This Release may only be modified in writing with the written consent of both Releasors and the School District Defendants.

11.0   **Severability**

In the event any part of this Agreement is deemed unenforceable, the unenforceable provisions will be severed and the remaining provisions shall survive.

12.0   **No Implied Waiver**

The waiver by any party of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach by any party, nor will any such waiver operate or be construed as a rescission of this Agreement.

13.0   **No Construction Against Drafter**

The wording in this Agreement was reviewed and accepted by all parties after reasonable time to review, and no party will be entitled to have any wording of this Agreement construed against the other party as the drafter of the Agreement in the event of any dispute in connection with this Agreement.

14.0   **Effectiveness**

This Release shall become effective immediately following execution by all Releasors.

15.0    **Copies**

Several copies of this Release may or will be signed by Releasors and each signed copy shall constitute an original and have equal force and effect.

16.0    **Confidentiality**

Releasees and Releasors agree that the mediation and settlement reached through mediation will remain confidential and that neither Releasees nor Releasors will make any public statements about any settlement or the terms of the settlement until all paperwork is finalized and School District's Board of Education approves this Release.

17.0    **Additional Terms and Conditions**

17.1    The School District agrees, within 30 days of the signing of this Release to provide Releasors' counsel with documentation confirming the training the School District provided to staff relating to anti-bullying, anti-harassment and Title IX in the school years of 2024-2025 and 2025-2026;

17.2    The School District agrees in the fall of 2026 to conduct an "in-person" training for all staff and paraprofessionals related to reporting of child abuse and Title IX issues and will subsequently provide Releasors' counsel with documentation confirming the training provided; and

17.3    The School District also agrees that moving forward from and after the execution of this Release that should a complaint be brought to the attention of the administration in the District as it relates to the claimed mistreatment of a special education student, the School District's administration will take steps to investigate those allegations and will pull and review any appropriate School District surveillance or security camera footage and retain those investigatory materials in accordance school policy and applicable law.

BY SIGNATURE, RELEASORS AFFIRM THAT RELEASORS HAVE READ THE FOREGOING RELEASE AND FULLY UNDERSTAND IT.

[THIS SPACE LEFT INTENTIONALLY BLANK]

8

[SIGNATURE PAGES TO FOLLOW]

RELEASORS:

By: Kamber Batchelor, as mother of
B███ B███, "B.B."

By: Shawna Benavides, as mother of
J███ L███, "J.L."

By: Jamie Ivey, as mother of
C███ L███ "C.L."

By: Chelsea Mosley, as mother of
D███ B███ "D.B."

By: Amber Elvington, as mother of
S███ W███ "S.W."

DATED THIS __3rd__ DAY OF ___June_____, 2026.

10

[SCHOOL DISTRICT SIGNATURE]

AGREED AND ACCEPTED THIS 24ᵗʰ DAY OF _____ June _____, 2026:

INDEPENDENT SCHOOL DISTRICT NO. 39
OF CHOCTAW COUNTY, OKLAHOMA A/K/A
HUGO PUBLIC SCHOOLS


Vice-PRESIDENT, HUGO BOARD OF
EDUCATION


CLERK OF THE BOARD OF
EDUCATION


_____
MARK RAINS
COUNSEL FOR SCHOOL DISTRICT DEFENDANT

11